IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SHAWN HAMILTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 18-cv-5635 |
| | ) | |
| SARA'S CITY WORKOUT, INC., | ) | **Jury Trial Requested** |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT**

NOW COMES the Plaintiff Shawn Hamilton ("Plaintiff"), by and through his undersigned attorneys and for his Complaint against the Defendant, Sara's City Workout, Inc. ("Defendant"), states as follows:

**NATURE OF ACTION**

1. This is a wrongful termination and hostile work environment case against Defendant for illegally terminating Plaintiff because of disability in violation of the Americans with Disabilities Act, 42 U.S.C. §12101, et seq., Section 504 of the Rehabilitation Act of 1973, as amended, at 29 U.S.C. §794 (the "ADA") and terminating him because of his sexual orientation and for illegally creating a work environment hostile to Plaintiff's gay sexual orientation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., as amended by the Civil Rights Act of 1991 ("Title VII").

**JURISDICTION AND VENUE**

2. This Court has federal question jurisdiction over this matter pursuant to 28

1

U.S.C. § 1331, which states that federal courts have primary jurisdiction over actions that arise under the laws of the United States.

   3.     Venue lies in the Northern District of Illinois because Plaintiff is a resident of this District, Defendant was engaged in business in this District, and the events giving rise to the claims alleged in this Complaint occurred in this District.

## PARTIES

   4.     Plaintiff Shawn Hamilton is a resident of Chicago, Illinois, and worked as a product manager and cinematographer in Defendant's Northbrook, Illinois office, located at 3675 Commercial Avenue, Northbrook, Illinois, from February 2012 until he was terminated by Defendant on September 27, 2017.

   5.     Defendant is a fitness company which offers videos, music, books, home study certifications, clothing, and equipment for personal trainers and group fitness professionals. It also provides fitness conventions and classes qualified and doing business in Illinois, including in Cook County.

   6.     At all relevant times, Defendant was an "employer" and Plaintiff was an "employee" as defined under the ADA (42 U.S.C §12111) in that Defendant had 15 or more employees in Illinois for each working day in each of the 20 or more calendar weeks during the relevant calendar years.

   7.     At all relevant times, Defendant was an "employer" and Plaintiff was an "employee" as defined under Title VII (42 U.S. Code § 2000e) in that Defendant had 15 or more employees in Illinois for each working day in each of the 20 or more calendar weeks during the relevant calendar years and was engaged in an industry affecting commerce.

8. At all relevant times, Plaintiff was qualified to perform his job duties with Defendant and did in fact satisfactorily perform his job duties with Defendant while employed there.

## PROCEDURAL BACKGROUND

9. On February 20, 2018, Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging sex and disability discrimination and retaliation. A true and correct copy of that charge is attached hereto as Exhibit 1.

10. On June 12, 2018, the EEOC issued Plaintiff a notice of right to sue, which entitled him to institute a civil action within 90 days of the date of receipt thereof. A true and correct copy of that notice is attached hereto as Exhibit 2.

11. Plaintiff has filed this lawsuit within 90 days of receiving the EEOC's notice of right to sue, thereby fulfilling all conditions precedent to the institution of his claims under the ADA and Title VII.

## FACTS

*Background*

12. In February 2012, Plaintiff began working for Defendant as a product manager, reporting directly to Defendant's Operations Director Michael Divello ("Divello") and Defendant's owner Sara Kooperman ("Kooperman").

13. When Plaintiff started in February 2012 his role included customer service, setting up trade show events, and the handling of various office management responsibilities.

3

14. In or about 2014, Defendant increased Plaintiff's job responsibilities to include being the primary cinematographer for Defendant's fitness videos.

15. During his tenure at Defendant, Plaintiff was a superb and outstanding employee and was never placed on any performance improvement plan.

*Sexual Orientation Harassment/Discrimination*

16. Things changed dramatically for Plaintiff in mid-2017.

17. Prior to mid-2017, Kooperman would make the occasional "gay joke" mocking and castigating gay people on a nearly weekly basis, including on video at public presentations.

18. In the months leading up to June 2017, however, Kooperman frequently told Plaintiff that Plaintiff was too sensitive and took things too seriously because he was gay. Divello also commented around this time that Plaintiff was too sensitive.

19. On June 21, 2017, Kooperman's decisive prejudice against gay people – and specifically Plaintiff who is gay – clearly manifested itself.

20. That day, Kooperman called Plaintiff and Divello into her office around 1:45 pm., raised a work-related issue and then –shockingly– began mocking Plaintiff's gay mannerisms and voice.

21. Shocked at this clearly gay harassment, Plaintiff asked Kooperman whether her derogatory and hostile behavior was an attempt to make fun of Plaintiff's gay mannerisms and voice. Kooperman then acknowledged directly to Plaintiff in the presence of Divello: "Yes, I'm imitating you."

22. Kooperman continued sexually harassing Plaintiff. And, after the meeting when Plaintiff sought Divello's help to stop Kooperman's gay sexual harassment of him, Divello stated to Plaintiff: "You have to let it go."

*Plaintiff's Anxiety-Disorder Surfaces*

23. Just a few weeks later, and in large part because of Kooperman's earlier gay verbal attack of Plaintiff, Plaintiff's anxiety-disorder disability manifested itself in the form of a major anxiety and panic attack that hospitalized Plaintiff.

24. Specifically, on July 13, 2017, Plaintiff suffered a major and very serious anxiety and panic attack in his office chair at work. He had significant difficulty breathing; he couldn't walk; he had significant difficulty talking; he felt major heart palpitations; he felt extremely dizzy; he was sweating profusely; he had extreme vertigo; and his face and hands were tingling and numb. Plaintiff thought he was going to die.

25. While Plaintiff was having this major anxiety/panic attack, Defendant's Creative Designer Karl Mendoza ("Mendoza") opened Plaintiff's door. Mendoza saw Plaintiff suffering in his chair, having difficulty breathing, and slurring his speech.

26. Mendoza asked Plaintiff: "What is wrong with you?" Plaintiff could only utter "Go get Claudio" who was Plaintiff's spouse and who also worked for Defendant.

27. Mendoza quickly alerted Claudio Cornejo ("Cornejo"), who arrived moments later with Defendant's Brochure Editor Tracey Lebowitz ("Lebowitz"). Cornejo Lebowitz both saw that Plaintiff clearly was having significant difficulty breathing. Ms. Lebowitz stayed by Plaintiff's side and tried to help.

28. Cornejo went to Divello's office and told him that Plaintiff was experiencing a major "anxiety attack," significant difficulty breathing, significant

5

difficulty walking, significant difficulty talking, major heart palpitations, extremely dizziness, profuse sweating, extreme vertigo, and tingling and numbness of his face and hands. Cornejo also told Divello that he (Cornejo) had to immediately take Plaintiff to the closest hospital emergency room. Divello approved and asked Cornejo to let him know what Plaintiff's diagnosis was.

29. Plaintiff was taken to and seen by doctors at nearby Glenbrook Hospital emergency room where he was diagnosed as having anxiety, paresthesia, and palpitations. He was treated and given a doctor's note stating that he should be off for the next three work days. Cornejo told Divello that the doctors had run some tests on Plaintiff to see if Plaintiff had had a heart attack, stroke, etc. and that Plaintiff was diagnosed having the disability of "major panic attack disorder."

30. The next day, on July 14, 2017, Plaintiff texted a copy of his doctor's note with the three work days off to both Kooperman and Divello and further texted them: "My medical condition requires bed rest with further follow up for the next five days. You may see the doctors note in attachment."

31. Later that day, Kooperman called Cornejo into her office because she wanted to talk about Plaintiff's emergency room visit and disability. Cornejo told Kooperman that Plaintiff had suffered from and was diagnosed with an anxiety-disorder disability that had caused Plaintiff to suffer a major "anxiety attack" requiring hospitalization. In response, Kooperman stated: "Shawn should find a job that doesn't stress him out," referring to the stress/anxiety that caused Plaintiff to be hospitalized.

*Requests For Reasonable Accommodations*

32.     A few days later Plaintiff made a reasonable time-off accommodation request for his anxiety-disorder disability. Specifically, on July 17, 2017, Plaintiff received a doctor's note for an additional "at least 8 weeks" time off (i.e., until at least September 11, 2017) for his anxiety-disorder disability.

33.     The next day, on July 18, 2017, Plaintiff emailed that note to Kooperman and Divello and wrote: "I am formally requesting medical leave for eight weeks to continue treatment with my medical care professional. Please see the attached letter noting that I am unable to return to work for at least eight weeks."

34.     Plaintiff was shocked that Kooperman didn't ask how he was doing; instead she only was interested in Plaintiff updating his doctor's note with a no-fly restriction so that she could get money back for flight tickets.

35.     On September 11, 2017, Mr. Hamilton went to his doctor and received another note from his doctor that read: "I saw Mr. Shawn Hamilton for a diagnostic evaluation today, Sept 11, 2017, and it is my professional opinion that his condition has improved enough that he should be able to go back to work during the first week of October 2017."

*Termination*

36.     Before the first week of October 2017 even came, Defendant terminated Plaintiff.

37.     Specifically, on September 27, 2017, Divello sent Plaintiff an email stating that Defendant viewed Plaintiff's failure to come back to work since suffering his disability as a voluntary resignation – even though Mr. Hamilton had a pending time-off

accommodation request to be off until "the first week of October 2017" – and, as such, provided Plaintiff with the COBRA materials required for departing employees.

38. Furthermore, when Plaintiff, through counsel, notified Divello later on September 27, 2017 that he (Plaintiff) was not resigning, Defendant did not respond to Plaintiff and had no further communication with him.

39. As a result of Defendant's conduct, Plaintiff has suffered loss of wages and benefits, as well as severe emotional distress.

## COUNT I

### Title VII Discrimination Claim/Sexual Orientation/Termination

40. Plaintiff hereby incorporates in this count the other paragraphs in this complaint as if fully set forth herein.

41. Plaintiff is a member of a protected class in that he is a homosexual and was discriminated against because of his sexual orientation.

42. At all relevant times, Plaintiff was qualified for the position and was able to perform his job.

43. Plaintiff suffered an adverse employment action in that he was fired by Defendant on or about September 27, 2017.

44. Plaintiff was treated by Defendant differently and less favorably than similarly situated heterosexual employees because of his sexual orientation.

45. Defendant terminated Plaintiff because of his sexual orientation.

46. As a result of Defendant's discriminatory conduct, Plaintiff was damaged and has suffered the loss of wages, benefits, humiliation, embarrassment, emotional distress, and other compensatory damages. The discriminatory actions by Defendant were

undertaken deliberately and intentionally and with malice and reckless indifference to Plaintiff's civil rights. The acts complained of were authorized and permitted by Defendant and its officers, managers, and supervisors.

47. Defendant's justifications for its actions are simply pretextual assertions meant to conceal its discriminatory intent and not taken in good faith.

WHEREFORE, Plaintiff prays that this Court:

a. Declare, decree, and adjudge that Defendant has violated Title VII;

b. Grant a preliminary and permanent injunction against Defendant and its officers, agents, and managers from violating Title VII;

c. Compel the Defendant and its officers, agents, and managers to comply with Title VII and refrain from discriminating against Plaintiff and interfering with his rights and protections under Title VII and awarding appropriate equitable relief;

d. Award the Plaintiff backpay, front pay, employment benefits, and other compensation that was denied or lost;

e. Order the Defendant to pay Plaintiff compensatory and punitive damages in an amount sufficient to punish Defendant for its past discrimination and to deter it from continuing with its discriminatory practices;

f. Award Plaintiff all pre-judgment and post-judgment interest to which she is entitled;

g. Award Plaintiff reasonable attorney's fees and costs; and

h. Award such other and further relief as is just and appropriate, including nominal damages.

## COUNT II

**Title VII Discrimination Claim/Sexual Orientation/Hostile Work Environment**

48. Plaintiff hereby incorporates in this count the other paragraphs in this complaint as if fully set forth herein.

49. Plaintiff is a member of a protected class in that he is a gay man and was discriminated against because of his sexual orientation.

50. At all relevant times, Plaintiff was qualified for the position and was able to perform his job.

51. Plaintiff was subjected to unwanted verbal conduct of a sexual nature by Defendant because of his sexual orientation.

52. Defendant's verbal conduct of a sexual nature based on Plaintiff's sexual orientation was severe and pervasive enough to create a hostile work environment leading to his termination.

53. Defendant's verbal conduct was directed at Plaintiff because of his sexual orientation.

54. Defendant's agent, owner and CEO Kooperman, was the offending party, establishing employer liability.

55. As a result of Defendant's discriminatory conduct, Plaintiff was damaged and has suffered the loss of wages, benefits, humiliation, embarrassment, emotional distress, and other compensatory damages. The discriminatory actions by Defendant were undertaken deliberately and intentionally and with malice and reckless indifference to

Plaintiff's civil rights. The acts complained of were authorized and permitted by Defendant and its officers, managers, and supervisors.

WHEREFORE, Plaintiff prays that this Court:

a. Declare, decree, and adjudge that Defendant has violated Title VII;

b. Grant a preliminary and permanent injunction against Defendant and its officers, agents, and managers from violating Title VII;

c. Compel the Defendant and its officers, agents, and managers to comply with Title VII and refrain from discriminating against Plaintiff and interfering with his rights and protections under Title VII and awarding appropriate equitable relief;

d. Award the Plaintiff backpay, front pay, employment benefits, and other compensation that was denied or lost;

e. Order the Defendant to pay Plaintiff compensatory and punitive damages in an amount sufficient to punish Defendant for its past discrimination and to deter it from continuing with its discriminatory practices;

f. Award Plaintiff all pre-judgment and post-judgment interest to which she is entitled;

g. Award Plaintiff reasonable attorneys' fees and costs; and

h. Award such other and further relief as is just and appropriate, including nominal damages.

## COUNT III

### ADA - Disparate Treatment/Termination

56. Plaintiff hereby incorporates in this count the other paragraphs in this complaint as if fully set forth herein.

57. At all relevant times, Plaintiff was an individual with a "disability" and/or was considered to have a "disability," as that term is defined in the ADA, as a result of his anxiety-disorder diagnosis.

58. Plaintiff had a physical or mental impairment that substantially limited one or more of his major life activities – including but not limited to his ability to sit for prolonged periods of time, to stand, to breath, concentrate, drive a vehicle, and otherwise function – had a record of such impairment, and was regarded as having such an impairment.

59. Plaintiff was qualified to perform the essential functions of his job as a project manager and cinematographer with or without a reasonable accommodation.

60. Plaintiff's similarly-situated employees who were not regarded as having a disability were treated more favorably than Plaintiff, as they were not terminated because of their disability.

61. Defendant terminated Plaintiff because of his disability.

62. As a direct and proximate result of said unlawful employment practices and in disregard of Plaintiff's rights, Plaintiff has suffered great mental anguish, humiliation, degradation, emotional distress, pain and suffering, inconvenience, financial crisis, lost wages and benefits, future pecuniary losses, and other consequential damages.

WHEREFORE, Plaintiff prays that this Court:

    a. Enter judgment in favor of Plaintiff and against the Defendant for violation of Plaintiff's rights under the ADA,

b.	Declare that the actions of the Defendant were discriminatory,

c.	Award Plaintiff compensatory damages, including, but not limited to, lost wages and other benefits, in such amount as will reasonably compensate him for his losses, and damages for emotional distress,

d.	Award Plaintiff punitive damages in such amount as the Court deems proper,

e.	Award Plaintiff his costs, attorneys' fees and non-taxable expenses in this action, and

f.	Grant Plaintiff such other and further relief as the Court deems equitable and just.

## JURY DEMAND

Plaintiff hereby demands trial by jury on all issues herein.

Respectfully submitted,
SHAWN HAMILTON

By: /s/ Michael A. Faccenda
    One of His Attorneys

Michael A. Faccenda
901 West Hillgrove Avenue
La Grange, IL 60525
Phone: 708-497-3077
Email: maf@connorsfaccenda.com
ARDC No. 6239317

By: /s/ Christopher P. Connors
    One of His Attorneys

Christopher P. Connors
901 West Hillgrove Avenue
La Grange, IL 60525
Phone: 312-994-2411
Email: cpc@connorsfaccenda.com
ARDC No. 6269559

# Exhibit 1

**CHARGE OF DISCRIMINATION**

Charge Presented To: ☐ FEPA  ☑ EEOC

Agency(ies) Charge No(s): 440-2018-03280

RECEIVED EEOC FEB 20 2018 CHICAGO DISTRICT OFFICE and EEOC

| | |
|---|---|
| Home Phone (incl. Area Code): 312-788-4756 | Date of Birth: 05/15/1972 |

Address: 6401 North Sheridan Blvd., Unit 203, Chicago, IL 60626

Employer: Sara's City Workout, Inc.
No. Employees: Approx 20
Phone No.: 847-562-4636

Address: 700 Ridge Avenue, Northbrook, IL 60062

**DISCRIMINATION BASED ON:** ☑ SEX  ☑ DISABILITY  ☑ RETALIATION

**DATE(S) DISCRIMINATION TOOK PLACE:** Earliest 06/01/2017  Latest 09/27/2017

---

I was terminated from my employment with Sara's City Workout, Inc. ("SCW") in violation of the Americans with Disabilities Act, 42 U.S.C. §12101, et seq., Section 504 of the Rehabilitation Act of 1973, as amended, at 29 U.S.C. §794 (the "ADA") and the Illinois Human Rights Act, 775 ILCS 5/1-101 et seq. (the "IHRA"). Specifically, SCW illegally terminated me because I had an anxiety-disorder disability in violation of the ADA and the IHRA. Moreover, SCW illegally created a work environment hostile to my gay sexual orientation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as amended by the Civil Rights Act of 1991 ("Title VII") and the IHRA. Below are the details regarding my disability and sex discrimination claims.

As background, in February 2012, I accepted an offer from SCW to become a product manager for the company. I reported directly to SCW Operations Director Michael Divello and SCW owner Sara Kooperman. When I started in February 2012, my role included customer service, setting up trade show events, and the handling of various office management responsibilities. In or about 2014, SCW increased my job responsibilities to include being the primary cinematographer for SCW's fitness videos. During my tenure at SCW, I was a superb and outstanding employee and was never placed on any performance improvement plan. In other words, I had a very successful career with SCW with very good evaluations, until Ms. Kooperman personally began harassing and mocking me for being gay and thereafter started retaliating against me for suffering from an anxiety-disorder disability (which was brought about in part because of Ms. Kooperman's mocking of my gay sexual orientation).

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

Charging Party Signature

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year)

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s) |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | |
| | | and EEOC |
| | State or local Agency, if any | |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

Things changed dramatically for me in mid-2017. Before then, Ms. Kooperman would make the occasional "gay joke" mocking and make fun of gay people. However, on June 21, 2017, Ms. Kooperman's decisive prejudice against gay people — and specifically such prejudice directed at me as a gay person — clearly manifested itself. Specifically, on June 21, 2017, Ms. Kooperman called me and Mr. Divello into her office around 1:45 pm. Ms. Kooperman raised a work-related issue and then — shockingly and horribly — began mocking my gay mannerisms and voice. Aghast at this clearly gay harassment, I asked her whether her derogatory and hostile behavior was an attempt to make fun of my gay mannerisms and voice. Ms. Kooperman said "yes" directly to me in the presence of Mr. Divello: "Yes, I'm imitating you!" Ms. Kooperman continued sexually harassing me. And, after the meeting when I sought Mr. Divello's help to stop Mr. Kooperman's horrible gay sexual harassment of me, Mr. Divello instructed me to "LET IT GO."

Just a few weeks later, and in large part because of Ms. Kooperman's earlier gay verbal attack of me, my anxiety-disorder disability manifested itself in the form of a major anxiety and panic attack that hospitalized me. Specifically, on July 13, 2017, I suffered a major and very serious anxiety and panic attack in my office chair at work. I had significant difficulty breathing; I couldn't walk; I had significant difficulty talking; I felt major heart palpitations; I felt extremely dizzy; I was sweating profusely; I had extreme vertigo; and my face and hands were tingling and numb. I thought I was going to die.

Luckily, while I was having this major anxiety/panic attack, SCW Creative Designer Karl Mendoza opened my office door and saw this horrible sight. Among other things, Mr. Mendoza saw me suffering in my chair, having difficulty breathing, and slurring my speech. Mr. Mendoza asked me: "What is wrong with you?" All that I could utter was "Go get Claudio" who was my spouse and who also worked at SCW. Mr. Mendoza darted away and quickly alerted Claudio Cornejo, who arrived moments later with SCW Brochure Editor Tracey Lebowitz. Mr. Cornejo and Ms. Lebowitz both saw that I clearly was having significant difficulty breathing. Ms. Lebowitz stayed by my side and tried to help. Mr. Cornejo went to Mr. Divello's office and told Mr. Divello that I was experiencing significant difficulty breathing, significant difficulty walking, significant difficulty talking, major heart palpitations, extreme dizziness, profuse sweating, extreme vertigo, and tingling and numbness of my face and hands. Mr. Cornejo also told Mr. Divello that he (Cornejo) had to immediately take me to the closest hospital emergency room. Mr. Divello approved and asked Mr. Cornejo if it was heart or anxiety related. Mr. Cornejo said "he didn't know." Mr. Divello asked Mr. Cornejo to let me know what my diagnosis was. Mr. Cornejo got the car, pulled it around, and picked me up after I had been helped to the exit by Ms. Lebowitz.

I was taken to and seen by doctors at nearby Glenbrook Hospital emergency room where I was diagnosed as having anxiety, paresthesia, and palpitations. I was treated and given a doctor's note stating that I should be off for the next three work days. During a telephone conversation, Mr. Cornejo told Mr. Divello that the doctors had run some tests on me to see if I had had a heart attack, stroke, etc.

The next day, on July 14, 2017, I texted a copy of my doctor's note with the three work days off to both Ms. Kooperman and Mr. Divello and further texted them: "My medical condition requires bed rest with further follow up for the next five days. You may see the doctors note in attachment."

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>2/19/18<br>Date / Charging Party Signature | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year)<br>2/19/18 |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☑ EEOC | |
| | | and EEOC |
| | State or local Agency, if any | |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

Later, on July 14, 2017, Ms. Lebowitz, Mr. Cornejo, and Registration Manager Sheetal Dasai discussed the follow-up doctor visits and the attending emergency room physician's major panic attack diagnosis. Mr. Divello asked questions about the diagnosis.

Also, on July 14, 2017, after learning of my condition, symptoms, and hospitalization, Ms. Kooperman shockingly confessed: "SHAWN SHOULD FIND A JOB THAT DOESN'T STRESS HIM OUT," referring to the stress/anxiety that caused me to be hospitalized. It is clear based on Ms. Kooperman's statement that she already had made up her mind at this point to terminate me because she didn't think I could handle the job in light of my disability, which she ultimately did.

A few days later I requested time off for my anxiety-disorder disability. Specifically, on July 17, 2017, I received a doctor's note for an additional "at least 8 weeks" time off (i.e., until at least September 11, 2017) for my anxiety-disorder disability. The next day, on July 18, 2017, I emailed that note to Ms. Kooperman and Mr. Divello and wrote: "I am formally requesting medical leave for eight weeks to continue treatment with my medical care professional. Please see the attached letter noting that I am unable to return to work for at least eight weeks." Shockingly, Ms. Kooperman didn't ask how I was doing; instead she only was interested in me updating my doctor's note with a no-fly restriction so that she could get money back for flight tickets.

On September 11, 2017, I went to my doctor and received another doctor's note that read: "I saw Mr. Shawn Hamilton for a diagnostic evaluation today, Sept 11, 2017, and it is my professional opinion that my condition has improved enough that I should be able to go back to work during the first week of October 2017."

What happened next was truly horrible and shocking. Before "the first week of October 2017" even came, SCW terminated me. Specifically, on September 27, 2017, Mr. Divello sent me an email stating that SCW viewed my circumstances as a voluntary resignation – even though I had told them that I would be coming back "the first week of October 2017." When I, through counsel, notified Mr. Divello later on September 27, 2017 that I was not resigning, SCW did not even respond to me and had no further communication with my attorney. The bottom line is that SCW did not want me coming back when I was better and deliberately chose to fire me before I was able to return during the first week of October 2017. The decision to terminate me was because of my disability, as Ms. Kooperman even made her discriminatory intent manifest when she remarkably admitted: "SHAWN SHOULD FIND A JOB THAT DOESN'T STRESS HIM OUT," referring to the stress/anxiety that my disability caused especially after I was horribly mocked and ridiculed for being a gay man.

In short, I had been a very loyal and hard-working employee for almost six years and had a very successful career with SCW with very good evaluations. That all changed when Ms. Kooperman personally began harassing and mocking me for being gay and thereafter started retaliating against him for suffering from an anxiety-disorder disability (which was brought about in part because of Ms. Kooperman's mocking of my gay sexual orientation).

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 2/19/18<br>Date — Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year)<br>2/19/18 |

Exhibit 2

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

To: Shawn L. Hamilton
c/o Christopher Connors, Esq.
Connors & Faccenda
901 W. Hillgrove Ave
La Grange, IL 60525

From: Chicago District Office
500 West Madison St
Suite 2000
Chicago, IL 60661

[ ] On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 440-2018-03280 | Grace Swierczek, Investigator | (312) 869-8144 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Julianne Bowman,
District Director

6/12/18
*(Date Mailed)*

Enclosures(s)

cc: SARA'S CITY WORKOUT, INC
c/o Sara Kooperman
Chief Executive Officer
3675 Commercial Ave
Northbrook, IL 60062